We will hear argument next in No. 22-1464, United States v. Spencer. Let's just wait for everybody to leave the room. Okay. Ms. Riddell. May it please the Court. Appellant brings this appeal because the District Court erroneously admitted two pieces of inadmissible hearsay evidence. The government says that the District Court acted within its discretion and any error in admission was harmless. However, that is not the case here. During trial, the District Court admitted out-of-court statements made by two Chanel security guards. The first set of statements was captured on a 911 call, and the second set of statements were captured on police officer body camera footage. Both sets of statements were admitted to the effect that the appellant possessed a weapon during the incident. They carried a lot of weight, and they were the most dramatic evidence on the element of force in this case. Now, the importance of this truth, whether or not the defendant actually did possess a weapon during the charged incident, cannot be overstated in a Hobbs Act robbery case where force is an element. And we respectfully seek... Well, force is an element. Possession of a gun is not an element, right? Yes. And... So the District Court instructed the jury that the government needed only to prove that the defendant threatened force, violence, or fear of injury, and that such violence, such threat could be made verbally or by physical gesture. So it was not required to prove that there was a gun. No, Your Honor. It was not required to prove whether or not there was a gun. However, evidence about the presence of a weapon was offered for the truth in this case, and our argument is simply that... That evidence went to whether there was a threat of force. Well, that would have been a non-hearsay purpose, Your Honor. And here, the standard here is whether or not the inadmissible evidence could have substantially swayed the jury. You're right. It's admitted as a present sense impression or an excited utterance, and so it's under a hearsay exception. But I guess my question is this, could the government have also introduced the statements just to prove the state of mind of the two witnesses? I think with an appropriate limiting instruction, that may have been proper, but that's not what happened here. Instead, the statements went in for the truth, and the concern is that no reasonable juror in this case, or we can't know that a juror in this case, didn't vote based on the admissible evidence for force. Well, actually, didn't both declarants testify, and didn't they both explain, you know, I wasn't sure I didn't see a gun, I just thought there was because other people thought there was a gun, right? So like the evidence before the jury was not that he definitely had a gun. So their statements at trial would have been and were admissible for their fear, and how they might have felt and what they might have thought the defendant actually possessed during the incident. The problem here is that their statements at trial were not, in fact, that the defendant possessed a weapon. Those statements were the out-of-court statements on the 911 call and the body camera footage. So the concern here is that the testimony outside of court was different than it was in court. Now, if I could talk a bit... But didn't you have the opportunity to explore that by actually questioning the declarants? We did. We did. However, once that evidence was offered, the bell could not be unrung for the jury that it was perhaps possible that a gun was, in fact, present during the incident. And wasn't there other evidence that suggested it was possible a gun was present during the incident? I mean, wasn't the whole theory that he wanted people to believe he had a gun at the very least? That's the government's theory. Here the concern is that it was so prejudicial to offer evidence that the defendant actually did, in fact, possess a weapon. That now, on appeal, we can't know that... Why was that so prejudicial? Because the jury, if they think he actually had a gun, would be more likely to convict him than if they think that he put everybody in fear of his having a gun? Yes. Here, the concern is that the evidence was... It was the government's most dramatic evidence on fear and on threats at all in this case. So for that evidence to have been based on inadmissible hearsay is particularly concerning in this case. Now it's particularly concerning given that the statements themselves indicate that neither of the hearsay statements were actually based on either of the security guard's own perceptions of the incident. For example, the 911 call. That was made by a security guard named Mr. Washington. He's referred to as Guard 2 in the appellant's briefing. Now, on the 911 call, Mr. Washington made three unambiguous statements to the effect that the appellant possessed a weapon. The first was, yes, one of the men were armed. The second was, one male had a gun, but it was four suspects. And the third was in response to a question from the 911 operator about what kind of gun it was that he had seen. Mr. Washington responded, handgun. So these were clearly out-of-court statements. They were offered for the truth. The problem is that when Mr. Washington only made these statements after someone in the background of the 911 call had repeated multiple times. I mean, the district court is worried that they're not based on his personal knowledge, right? So it waits to admit the recording until he has a chance to take the stand and testify. And the district court says, actually, it was. Some people were saying that somebody had a gun, but he also was observing the person and so testifying based on his own knowledge. So it is not simply repeating. The district court did not think it was simply repeating what somebody else said, right? So our concern is precisely with that foundation that was laid at trial, and that the district court erred in deciding that that foundation had been adequately laid. And that's because Mr. Washington's testimony at trial was so contradictory. Now, what the district court relied on heavily in coming to this conclusion was, just as you said, the gestures that the appellant had made, and also Mr. Washington's testimony that he was, quote, 100% sure that the appellant had a gun. But what's important is what else Mr. Washington said when he testified, which was that he never saw a gun, that the appellant had his back to him, and also that he had— So is this the nature of the thing? If a defendant is going to put people in fear that he has a gun, some of those people are going to think he has a gun, right? And so is it any present-sense impression or any extended understanding from the time of the incident going to be people saying he has a gun? And the fact that he's putting people in fear of having a gun, but he doesn't have one, means that you can never introduce evidence from the time of the incident? No, Your Honor. It certainly does not mean that. In order to offer that type of evidence, however, the declarant has to have actually witnessed what they're describing. And here, the problem is that on the 911 call, Mr. Washington unequivocally says that the appellant possessed a handgun, and then later testifies that he never saw it. He clearly believed it to be the case, based on what he saw, the movements, et cetera. So even if it turned out that he was wrong, he believed it to be the case. And in that event, it should have been barred from admission as an admissible hearsay, because even if that were his belief, it was not based on reasonably— So somebody can't say that—so if somebody walks in and they're holding something in a paper bag and pointing it at people because they don't actually see the gun, that's just always going to be an admissible hearsay, unless somebody actually sees the gun? They would have to actually see some—the problem here is the precision with which Mr. Washington testified on the 911 call to have actually having seen the gun. If we were only dealing with his trial testimony, which was contradictory, in which we did elicit all of these differences— The 911 call, he says, I've seen the gun, but he says he has a gun, right? He says one of the men were armed, and then in response to a question about what kind of gun he saw, he responds, handgun. So the issue here is also that these out-of-court statements bolstered his in-court testimony. Well, you can tell, based on somebody's movements and all the things that Washington testified to, the district court thought his opinion was based on, you can tell whether somebody has a rifle or a handgun, can't you, just based on movements? Well, we submit that here, in this case, it was speculation, and it wouldn't have been reasonable based on the gestures that the appellant made in this case to assume that he had a gun. For example, the gestures at issue here are that he had an open hand, that he put it into his sweatpants, and then he removed an unopened hand. No gun was ever seen, and further, Washington testified at trial that he never saw the imprint of a gun or the outline of a gun at all. But the handgun thing, the only plausible inference about, unless you think he's got a shotgun stuck down his sweatpants, the handgun is the natural inference. While it may be plausible, it's still speculation. Okay. And what... When we admit evidence as an excited utterance or a present sense impression, the impression doesn't always have to be accurate, right? Isn't the question whether the person actually was in agitated state from the incident? Yes. However, there is a threshold question of whether or not the statements are reliable, and whether or not, and part of that analysis is whether or not they're based on the person's own perceptions. The problem here is that there's no reasonable basis to actually make that finding, that these statements unequivocally saying that the appellant possessed a weapon were based on any perception of a weapon. But you don't dispute that both of the declarants witnessed the defendant, right? Yes. And his movements and so on. Like, they were there, right? Yes, they were. You're just saying that witnessing somebody's movements, where you sort of infer that they're acting as if they have a gun is just not sufficient to say that they have a gun. You must see the gun directly. Otherwise, you can never have a statement that says the person had a gun. It's also particular... I'm sorry, is that your position? It is not my position. My position is more so, and I think it's better to articulate that in this case, there is unique prejudice to entering that kind of evidence, where in a Hobbs Act robbery case, force is an element. And that while this could reasonably be speculation, and that admitting such evidence in this case is far more, it's substantially more prejudicial than it is appropriate on the issue. I mean, if you make an inference based on how somebody who's robbing you is moving around, is it speculation that they have a gun? It's not just baseless speculation. It's an inference from their movements and threats, right? In this case, based on the testimony from the witnesses, there is reason to believe that it was baseless. While they did see him moving around, it isn't reasonable. So it was baseless whether he had a gun or not, and yet the guard surrenders her gun and they turn over the money and all of that, right? They had no basis for believing that the person had a gun, and yet he succeeded in committing a robbery. Well, no such turning over of a gun happened in this instance. Wasn't there a guard who was armed? Is that not right? There was a guard that was armed. And the guard did not raise the guard's gun because that person thought that the defendant had a gun. So the guard, the guard in this instance, Ms. Harvey, who was the 9-1-1, the one who spoke on the body camera footage, she showed her weapon first, and then the gestures that we discussed took place, and then what occurred was that she essentially put her hands up and backed away. Okay, so she put her hands up and backed away from Mr. Spencer, and yet you think she had no basis for believing that he had a gun. So why did she put her hands up and back away? The problem here is this… Could the jury have reasonably believed that she backed up and withdrew because she thought the defendant had a gun? So this raises the problem of her thinking… Yes, the jury could have reasonably… And aren't we supposed to construe the evidence in the light most favorable to the government since it was a conviction? Yes, Your Honor. However, the government has the burden of showing that the inadmissible hearsay evidence in this case would not have substantially swayed the verdict. Well, it's not inadmissible if it's an excited utterance, right? That's correct. Why was that wrong, that it was six minutes later? Why is it an abuse of discretion for the district court to conclude that it was an excited utterance or present-sense impression? Because when probed on the basis of why these witnesses actually made those statements, we get contradicting testimony about what they actually had seen. Mr. Washington testified that he didn't see a gun, he never saw the imprint of a gun or the outline of a gun. Ms. Harvey testified at trial that she couldn't remember whether or not she had ever seen any part of a gun. So the concern here is that the threshold question of whether or not these statements were actually based on these individuals' own perception was not met. Okay, thank you very much, Ms. Riddell. You've reserved time for a rebuttal, so we'll hear from you again. Let's turn to the government. Ms. Chong. May it please the Court. My name is Jane Chong, and I'm an assistant U.S. attorney in the Southern District of New York. I represent the United States in this appeal, as I did in the district court below. The judgment should be affirmed because there was no error, and certainly no abuse of discretion, as to the admission of either set of recorded statements in dispute. But given the panel's interest in the harmless error question, I'd like to go ahead and focus on that. First, I'd like to make clear the chronology of events to which— He wasn't admitted for the truth when all the government has to prove is that he put people in fear of having a gun. Like, you didn't actually have to admit evidence that he had a gun, right? Your Honor, that's true, but the government did feel that it was probative evidence, distinguishable from the bloodless testimony that a witness might provide on the stand. Here, over a year after the robbery, because it was probative and because it was appropriately admissible, the government did offer it into evidence.  No, Your Honor. For the proposition that the witnesses in that moment, specifically Ms. Harvey, believed she had seen a gun, and in fact she described the gun— Yeah, but then it wouldn't be hearsay if, like, if you're just admitting it for the fact that, you know, it's evidence that she believed he had a gun, then the statement, he has a gun, is not being admitted for the truth of the matter asserted, but because she believed it at that moment, right? Your Honor, you're absolutely right that in the government's case, and as Ms. Harvey testified, she was not sure that there was a gun. However, in the statements themselves, she did think that she had seen a gun, and the government did introduce it for the truth of that statement. Right, the government did introduce it for the truth of that statement, but it seems like it really was only considered for her state of mind at the time. That's fair, Your Honor, and we do make that argument. Did the government argue that he had a gun? No, Your Honor, and in fact, I think this is a very important fact to highlight here. I know that in the appellant's brief, there's this emphasis on the idea that the appellant had a firearm during the offense, and the reply brief actually states, the government repeatedly emphasized an argument, the evidence that the appellant had a firearm. That is not an accurate characterization of the importance of the gun in the case, as the panel has noted, or the government's closing arguments. As the panel has observed, whether the appellant had a gun was, of course, not an element of the charged robbery, and what was really dispositive here was whether the appellant made the victims reasonably fear personal harm. And so the government actually emphasized this distinction multiple times in its closing. For example, and this is at Joint Appendix 740, my colleague accurately stated to the jury, now during cross-examination, you heard defense counsel make a big deal about the fact that no one saw a gun. You heard that on direct, too. Nobody actually saw a gun, but that doesn't matter. You don't need to see a gun to know when someone is threatening, when they get in your face and put their hand in their pants. This distinction, Your Honors, between Eric Spencer's possession of a gun and his effort to scare the victims into believing he had a gun is absolutely key, and it was key at trial. But why isn't that prejudicial? So if you're only proving it, you say it doesn't matter whether he had a gun, but then you introduce evidence that he did have a gun, aren't you just introducing extraneous evidence that, you know, might incense the jury? Your Honor, we don't believe it was prejudicial, especially since both guards went ahead and testified on the stand. And when they testified on the stand, the jury was entitled to consider the fact that now the first security guard, Ms. Harvey, was stating that she didn't remember seeing a gun, she wasn't sure if there was one. However, the really important fact, Your Honors, is that three witnesses, two security guards and a store manager, attested to the exact same chronology of events that led them to believe the appellant wanted them to believe there was a gun. I would have expected there to be case law and for it to appear in your harmless error section saying what you just said, which is that any prejudice is diminished when the witness actually takes the stand and acknowledges all the countervailing or complicating factors in person. Are you making that argument as a legal argument? Is there case law in support of it? Your Honor, I think the major argument that we make in our brief is that these individuals were available for cross-examination. I think that is a variation on the argument that Your Honor is pointing to and we do make that argument. And that's very important because, again, to the extent that there was any supposed prejudice or to the extent the jury should be allowed to wonder whether or not Ms. Harvey, for example, whether or not her statements about seeing a little bit of a handle can be believed, the defense counsel had every opportunity to ask Ms. Harvey on the stand and, in fact, did. The other thing that's very important here, Your Honors, it's not just three witnesses who attested to this engagement with Ms. Harvey that the robber had, which was threatening. There was actually store surveillance camera footage that captured that chronology and made clear that the witnesses were attesting to something that happened. That store footage shows Ms. Harvey displaying her weapon. It shows the defendant's aggressive approach of Ms. Harvey. It shows his hand inside his pants. And it shows the victims with their hands up. It's really very clear evidence. And as narrated by the witnesses describing their fear, it's just such overwhelming evidence that I think any error here has to be deemed harmless. If the Court has no further questions. Were the statements that he had a gun, was it based on speculation? No, Your Honor. And, in fact, I think that is a really important distinction to make here. There's a real difference between the educated inferences embedded in one's own perception of events, because one is there, one is seeing what's on scene. There's a distinction between that and inadmissible speculation about facts to which the declarant simply doesn't have access. And, in fact, you can actually see that Judge Woods explored this very difference. In his pretrial decision, he actually reserved judgment on admitting Mr. Washington's 911 call, statements indicating that the defendant had a gun, but did exclude, for lack of foundation, Mr. Washington's statements indicating the robber didn't pull the gun out because Ms. Harvey didn't pull hers out. Judge Woods explained, to be clear, if the statement had been the armed robber didn't pull out the gun after Ms. Harvey didn't pull hers out, that would be a different conversation. It's the because that is the linchpin. In other words, unless more could be provided about why the defendant didn't pull out his firearm in the way of foundation, Mr. Washington appeared to be speculating on why the defendant didn't pull it out. That is very different, Your Honors, from a sequence of events that a witness observed and from which it, yes, made some inferences. Of course, you can see a person has a gun because you see the shiny metal of the gun, but there are other ways to infer in that moment because you are there and you have personal knowledge that the individual has a gun. It's precisely what the witnesses did here and Judge Woods correctly acknowledged that fact. If the panel has no further questions, the judgment should be affirmed. Okay, thank you very much. Ms. Chong will turn back to Ms. Riddell-Arnabell. May it please the Court. I'd briefly like to respond to the government's argument that it didn't offer the evidence to go towards the truth of whether or not the appellant actually did possess a weapon. Now, the government did, in fact, offer this evidence at trial for the truth and they did repeatedly emphasize at trial the importance that the appellant possessed a weapon. In fact, in closing... The government just quoted from the summation where the prosecutor said it didn't matter whether he actually had a gun. So while they did make that argument, they also made the argument in summation as well that he did, in fact, possess a weapon. And also during closing, the government said there's only one reasonable explanation. He's got a gun. Now, this evidence was critical to proving Mr. Spencer guilty of Hobbs Act robbery. And any argument that the evidence was offered for fear should be dismissed because... How do you respond to the harmless error argument that there was lots of evidence that he was guilty, including admitting to having Chanel bags on the day of the robbery, his Facebook account and cell phone showing pictures of stolen bags, private messages with people about selling the bags, posting something on Facebook saying he had so many Chanel bags, and the other evidence, the witness testimony and the surveillance videos? So while the importance and the strength of the government's case is a factor that the court should consider, so is the importance of the wrongly admitted testimony. And here, the wrongly admitted testimony was so prejudicial because it indicated that the defendant actually did possess a weapon. It went directly to force, and the government repeatedly emphasized that at trial. Now, as such, any argument that the evidence was offered... Both of these statements, if the declarants had said I think he has a gun, there would be no prejudice, right? The problem here is the specificity on the 911 call and the body camera footage. So while the government would like... Just stood up and said, for example, that you can make inferences based on gestures, that's not what the 911 call or the body camera footage said. They unequivocally said the defendant possessed a weapon during the incident. That's what the declarants said, you're saying? They say he has a gun. But if they had said I think he has a gun, you wouldn't have this objection. If they had said based on his movements, I believe he has a gun, you wouldn't have this objection. It's the fact that they said it that way. It's the specificity that they unequivocally said that the defendant possessed a weapon during the incident. Now, as such, any argument that this evidence was offered for fear should be dismissed. Here, fear and force are inextricably intertwined. And we respectfully submit. And the government simply cannot meet its burden here of showing that the jury was not pushed over the line by the improper admission of evidence indicating that the appellant did in fact possess a weapon. Okay, thank you very much, Ms. Riddell. The case is submitted.